IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| ROBERT S. REED a/k/a ROBERT S. | * | Chapter 13 |
| REED, SR., d/b/a CREDIT RANCH | * | |
| AUTO SALES & SERVICE, RAE ANN | * | |
| REED a/k/a RAE A. REED a/k/a MMI | * | |
| COMPONENTS a/k/a MMI a/k/a MMI | * | |
| RACING COMPONENTS, | * | |
|     Debtors | * | |
| | * | Case No.: 1-04-00337MDF |
| PNC BANK N.A., | * | |
|     Objectant | * | |
| | * | |
| v. | * | |
| | * | |
| ROBERT S. REED a/k/a ROBERT S. | * | |
| REED, SR., d/b/a CREDIT RANCH | * | |
| AUTO SALES & SERVICE, RAE ANN | * | |
| REED a/k/a RAE A. REED a/k/a MMI | * | |
| COMPONENTS a/k/a MMI a/k/a MMI | * | |
| RACING COMPONENTS, | * | |
|     Respondent | * | |

## OPINION

### Procedural and Factual History

Before me is the Objection of PNC Bank ("PNC") to the Chapter 13 Plan of the above-captioned debtors ("Debtors"). PNC asserts that the Plan may not be confirmed because it impermissibly proposes to reduce the interest rates and extend the terms of certain loans PNC made to Debtors for various business purposes. These loans are secured by Debtors' residence and certain other business-related property.

On February 4, 2000, Debtors executed a promissory note and granted an "open end" mortgage to PNC in exchange for a loan of $75,000.00. The term of the loan was ten years and

1

the rate of interest was eleven percent (11%). On April 5, 2002, Debtors executed a second note in exchange for a loan of $24,878.61, which also was secured by the open end mortgage. Debtor's residence has a fair market value of $82,000.00 and is subject to a first mortgage in favor of Washington Mutual Bank in the amount of $36,000.00.

On January 21, 2004, Debtors filed the instant case after they defaulted on the notes to PNC. In their Chapter 13 plan Debtors seek to reduce the value of PNC's secured claim to $37,800.00 and to pay this amount outside of the plan over twenty years at an interest rate of six (6) percent. Debtors determined the value of PNC's secured claim by subtracting the amount of the Washington Mutual mortgage ($36,000.00) from the estimated value of the property ($82,000.00) and then further subtracting hypothetical cost of sale of 10% ($8,200.00).

PNC's objection to this plan has been heard by the Court and briefed by the parties. It is ready for decision.[1]

## **Discussion**

Debtors seek to utilize 11 U.S.C. §506(a) to modify or "cram down" a secured claim from its full value to the current market value of the collateral. "A claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed, a debtor can void a lien on the property pursuant to § 506(d) to the extent the claim is no longer secured and thus is not 'an allowed secured claim.'" *Dewsnup v. Timm*, 502 U.S. 410, 414, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Although a debtor may not reduce an undersecured mortgage on residential real estate to the fair market value of the property, lien stripping is still permitted in a

---

[1] I have jurisdiction to hear this matter pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A),(G) and (O). This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052.

2

Chapter 13 case when a loan is secured by property other than debtor's principal residence. *In re Hammond,* 27 F.3d 52 (3d Cir. 1994); *See* 11 U.S.C. §1322(b)(2).

In the case at bar, the PNC loans were secured by property other than Debtors' residence, which enabled Debtors to propose modification of PNC's rights under the Notes. However, Debtors do not simply propose to reduce the amount of the secured claim, they also propose to pay the secured value outside the plan over twenty years and at a reduced interest rate. PNC argues that 11 U.S.C. §1325 precludes Debtors from extending the repayment period of the notes and cramming down the interest rate. Section 1325 provides, in pertinent part, that the court shall confirm a plan if, with respect to any secured claim provided for in the plan, the holder of the claim retains its lien and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. §1325(a)(5)(B)(ii).

PNC's brief also makes a cursory reference to 11 U.S.C. §1322(d) to support its objection to the treatment of its claim. Section 1322(d) provides that "[t]he plan may not provide for payments over a period that is longer than three years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years." Section 1322(d) prohibits a debtor from confirming a plan that proposes to modify a secured creditors' claim and then make payments beyond the term of the plan. This principle was clearly explained in *In re Hussain,* 250 B.R. 502, 508 (Bankr. D. N.J. 2000).

> [A] chapter 13 debtor cannot modify a claim under a chapter 13 plan and then argue that the claim is being paid outside the plan. Any attempt by a debtor to modify a claim pursuant to §1322(b)(2), requires compliance with the statutory limitations of §1322(d).

***

> It is clear that §1322(d) "requires that the repayment of any claim modified pursuant to Code §1322(b)(2) must be completed within three years, unless the Court, for cause, approves a five year plan." (Citation omitted.) More importantly, under no circumstances may a bankruptcy court confirm a chapter 13 plan that extends payment beyond the maximum five year statutory limitation set forth in §1322(d). (Citations omitted.) Debtor's attempt to confirm a plan that impermissively modifies various real estate secured claims to extend maturity for twenty to thirty years is clearly contrary to authority.

*Id.* at 508 -509. *See also, In re Enewally*, 276 B.R. 643 (Bankr. C.D. Cal. 2002), *rev'd on other grounds*, 368 F.3d 1165 (9th Cir. 2004), *cert. denied*, 2004 WL 2296631 (December 6, 2004).

Debtors' proposed plan provides that PNC will retain the liens securing its claims as §1325(a)(5)(B)(i) requires. However, as indicated in *Hussain,* the barrier to confirmation of Debtors' plan is its failure to comply with §1322(d), which requires payment of the present value of PNC's entire secured claim *within the life of the plan*.

> Cramdown necessarily involves a modification of the secured creditor's rights with regard to such factors as number of payments and rate of interest. In the cramdown scenario, a Chapter 13 plan must provide that the secured creditor receive the present value of his secured claim *within the life of the plan*, or else an objection to confirmation must be sustained.

*In re Stivender,* 301 B.R. 498, 500 (Bankr. S.D. Ohio 2003);*In re Tavella*, 191 B.R. 637, 640 (Bankr. E.D. Pa. 1996) (italics added), *citing, Appeal of Capps,* 836 F2d 773, 776 (3rd Cir. 1987); *Landmark Financial Services v. Hall,* 918 F.2d 1150, 1153-54 (4th Cir. 1990); *In re Bender,* 86 B.R. 809 (Bankr. E.D. Pa.1988).

Debtors argue that 11 U.S.C. §1322(b)(5) provides an alternative basis for confirmation of their plan. Section 1322(b)(5) provides that a plan may "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any ... secured claim on which the last payment is due ..." after the terminal date for the plan. According

4

Case 1:04-bk-00337-MDF    Doc 38    Filed 12/21/04    Entered 12/22/04 12:46:39    Desc
Main Document      Page 4 of 5

to Debtors, Section 1322(b)(5) "impliedly forms the basis of permissibility of paying portions of allowable secured claims beyond the due date of the final payment under the Chapter 13 Plan." (Debtor's Brief p. 6). Debtors' interpretation of the "cure and maintain" provisions of Section 1322(b)(5) has been rejected by the courts. A Massachusetts bankruptcy court specifically rejected this assertion, holding that "a change in the amount of the monthly payments and interest rate would not constitute "maintenance of payments;" as the phrase "maintenance of payments connotes an absence of change." *In re McGregor,* 172 B.R. 718, 721 (Bankr. D. Mass. 1994).[2] Finally, Debtors cannot alter the contractual interest rate unless they pay the full amount of the allowed claim through the plan. *Tavella*, 191 B.R. at 640. *See also Matter of Pruett*, 178 B.R. 7 (Bankr. N.D. Ala. 1995) (Change in interest rate and payment amounts requires payment of allowed amount of secured claim over five-year life of plan).

Accordingly, Debtors' plan cannot be confirmed because Debtors cannot modify the terms of the loans unless they pay the full amount of the allowed secured claim through the plan.

An appropriate order follows.

BY THE COURT,

Mary D. France
Bankruptcy Judge

Date: December 21, 2004
*This electronic order is signed and filed on the same date.*

---

[2]Some bankruptcy courts have permitted debtors to bifurcate the claim of undersecured creditors into secured and unsecured claims and then continue to make loan payments in the contract amount at the original interest rate until the secured debts are paid in full. *See, e.g.*, *In re Enewally*, 276 B.R. at 652.; *In re McGregor*, 172 B.R. at 721; *Matter of Pruett*, 178 B.R. at 8-9. Other courts have held that a debtor may not cram down the value of a secured claim and then repay it over a period longer than the plan term. *See, e.g. In re Enewally*, 368 F.3d at 1172; *In re Stivender,* 301 B.R. at 500. Since Debtors in the within case proposed to pay PNC's secured claim under terms different from those of the original note, I do not reach whether this alternative strategy conflicts with the requirements of Section 1322(b)(5).